IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04cv249

| | |
|---|---|
| DEEP GAP FARM, INC.; GEORGE G. LEVIN; and GAYLA SUE LEVIN, <br><br> Plaintiffs, <br><br> Vs. <br><br> CHARLES AUSBURN; and DEEP GAP CATTLE & TIMBER CO., LLC, <br><br> Defendants. | SECOND MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the court on plaintiffs' Motion to Disqualify Counsel for Defendants, Mr. George Ward Hendon, Esquire. An order granting or denying a motion to disqualify an attorney is a final order appealable pursuant 28, United States Code, Section 1291. Aetna Casualty & Sur. Co. v. United States, 570 F.2d 1197 (4th Cir. 1978), cert. denied, 439 U.S. 821 (1978); MacKethan v. Peat, Marwick, Mitchell & Co., 557 F.2d 395, 396 (4th Cir. 1977). Inasmuch as disposition of such motion is a "final order" directly appealable to the Court of Appeals for the Fourth Circuit, in accordance with 28, United States Code, Section 636(b), the undersigned enters the following recommendation rather than an Order.

I.  **Background**

This is the second recommendation entered by the undersigned in pre-discovery proceedings in this matter. This action involves a commercial real estate transaction concerning the sale of in excess of 4,000 acres of land in Polk County, and the resulting responsibility for a commission on the approximately $15,000,000 purchase price. Plaintiffs have alleged that defendants misrepresented the involvement of two real estate agents from

1

Western Carolina Land Auction Company ("WCLA")during the plaintiffs' sale of "Deep Gap Farm" to defendants. Plaintiffs have alleged that the purpose of such misrepresentation was to shift responsibility for a substantial real estate sales commission from defendants to plaintiffs after the sale closed. See Complaint, at ¶¶ 24-29.

This is the second action involving the sale of this tract of land. In the first action, plaintiffs herein were sued by WCLA for a commission they contended was due and owing on such sale. According to the plaintiff, that action was settled when plaintiff agreed to pay WCLA $412,500. In turn, the defendants in that action have become the plaintiffs in this action, wherein they seek indemnification from defendants - - who were the purchasers of the tract - - who allegedly warranted in the sales contract that no real estate agents were used in the sale and that no commission was due. In addition to indemnification, plaintiffs have asserted a claim for unfair and deceptive trade practices.

## II. Background Concerning Plaintiffs' Motion for Recusal of Mr. Hendon

Defendants purchased the real property from plaintiffs on or about March 14, 2003. When WCLA was preparing to sue plaintiffs herein in state court, it employed Mr. Hendon as its attorney. In his preparation for the WCLA litigation, Mr. Hendon allegedly met with defendant Charles Ausburn in August 2003.[1] As a result of that meeting, Mr. Hendon purportedly tendered to Mr. Ausburn a proposed affidavit, which he adopted in part and rejected in part.

In that affidavit, Defendant Ausburn purportedly averred that WCLA, acting as the buyer's agent, was the "procuring source" for the sale. Apparently, that affidavit lead plaintiffs herein to settle WCLA's claim for a commission. In this action, it is alleged that

---

[1] The court notes a typographical error in Mr. Hendon's brief at page 4 as to the date of the meeting, and has relied instead on the Affidavit of Charles Ausburn at ¶¶ 4 & 5.

2

Defendant Ausburn's affidavit is in direct conflict with representations made in the sales contract with plaintiffs that "[e]ach party represents to the other that no person to whom any commission is payable has been involved in this transaction." Complaint, at ¶ 15.

## III. Discussion

### A. Standards Applicable to Disqualification of Counsel

Plaintiffs seek disqualification of defendants' attorney, and the burden is solely on the moving party to make a strong showing that disqualification is appropriate. Standwood Corp. V. Barnum, 575 F.Supp. 1250, 1251 (W.D.N.C. 1983). In this case, plaintiffs contend that Mr. Hendon should be disqualified because it is likely that he will be a necessary witness and they cite Rule 3.7 of the Revised Rules of Professional Conduct of the North Carolina State Bar. Rule 3.7 provides:

**Lawyer as Witness**

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:
  (1) the testimony relates to an uncontested issue;
  (2) the testimony relates to the nature and value of legal services rendered in the case; or
  (3) disqualification of the lawyer would substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

R.R.P.C. 3.7.

Plaintiffs contend this rule comes into play because Mr. Hendon "will be a material witness regarding the collaborations between his clients in this lawsuit and his clients in the Prior Action." Brief in Support, at 3. Plaintiffs contend that they will depose Mr. Hendon as to all non-privileged statements made to him by Defendant Ausburn, and others, as he prepared for the prior litigation. Apparently, plaintiffs believe that Defendant Ausburn made statements against interest or provided Mr. Hendon with non-privileged information during

3

the August 2003 interview that would be useful in this case.

In response to the motion, Mr. Hendon has stated that he took no notes during the interview and that he is not a necessary witness in this action. First, Mr. Hendon states that the interview took place five months after the occurrence of the last event giving rise to plaintiffs' claims in this action. Second, that Defendant Ausburn communications with him were in substance the same as communications he had with counsel for plaintiffs herein during the prior action. Third, that neither Mr. Hendon nor his firm was involved in the actual land transaction that gave rise to this lawsuit, while plaintiffs' counsel's firm represented plaintiffs in the actual transaction. Fourth, the information he gathered from Defendant Ausburn in that action is, for the most part, available through Defendant Ausburn's earlier affidavit, through Defendant Ausburn himself, and through plaintiffs' own counsel who also interviewed Defendant Ausburn. Fifth, while plaintiffs characterize the August 2003 meeting as a "crucial strategy meeting," Mr. Hendon contends it was "a routine interview of a prospective witness to a dispute." Reply, at 4.

Finally, Mr. Hendon has argued that his disqualification would work an undue hardship on the defendants if they are forced to obtain new counsel. Due to the complexity of the transaction and the familiarity of Mr. Hendon with the case, defendants "have had the benefit, and seek to continue to have the benefit, of one set of attorneys involved in not only the sale itself, but two lawsuits arising out of the sale." Reply, at 5.

### B. Determining Whether Mr. Hendon is a Necessary Witness

In determining whether Mr. Hendon has a conflict, the court has not only considered whether Mr. Hendon could potentially be a witness, but whether he would be a "necessary witness" as provided by Rule 3.7.

> [T]he comments indicate that "if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the

lawyer's firm, the representation is improper." However, "determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved."

Cunningham v. Sams, 161 N.C.App. 295, 299 (2003)(citing the comments to the North Carolina Revised Rules of Professional Conduct). In the Fourth Circuit, the

> roles of witness and advocate are fundamentally inconsistent and when . . . a lawyer ought to testify as a witness for his client, he must as a rule withdraw from advocacy.
> * * *
> Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate.

International Woodworkers of Am. v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1272 & n.21 (4th Cir. 1981).

In Garlow v. Zakaib, 186 W.Va. 457 (W.Va.1991), the Supreme Court of West Virginia adopted and developed a three-part test to determine when disqualification of counsel was appropriate upon motion of opposing counsel. Both North Carolina's and West Virginia's Rule 3.7 appear to mirror ABA Model Rule 3.7, making the West Virginia decision in Garlow highly instructive:

> When an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.

Id., at 464 (quoting syl. pt. 3, Smithson v. United States Fidelity & Guaranty Co., 186 W.Va. 195 (1991)). Because the West Virginia Court addressed Rule 3.7 in the context of a motion filed by an opposing party, it provides this court with a framework for considering whether Mr. Henson should be disqualified.

5

## 1. The First Factor

The first question asks whether the attorney may give evidence material to an issue being litigated. Mr. Hendon argues that any information he gathered in August 2003 is not relevant to the events upon which plaintiffs' action is founded, all of which ended five months earlier. In reply, plaintiffs argue that the information may be relevant to its second claim for relief, which is alleged under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). To prove a claim under the UDTPA, a plaintiff must show the following:

(1) conduct constituting an "unfair or deceptive act or practice;"

(2) conduct "in or affecting commerce," and

(3) that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996). As conduct constituting the unfair practice, plaintiffs have alleged that at paragraph 27 of the Complaint, as follows:

> 27. Timber Co.'s aforesaid material breach of the Sales Contract was fraudulent and occurred under substantial aggravating circumstances, in that the Sales Contract was signed by Ausburn on behalf of Timber Co. with knowledge of the falsity of Timber Co's representation in paragraph 18(e) that no person to whom any commission was payable had been involved in the transaction.

It appears that plaintiffs will attempt to prove the falsity of defendants' alleged representation in paragraph 18(e) of the sales contract though introduction of Defendant Ausburn's affidavit. At pages 1 and 2 of its reply, plaintiffs discuss the reason why what occurred at such meeting is relevant to this cause of action:

> This series of events provides circumstantial evidence . . . that Ausburn "instructed WCLA to refrain from becoming directly and actively involved in negotiating the terms of Timber Co.'s purchase of the Premises." as alleged in paragraph 25 of Plaintiff's Complaint.
> There is no reason Ausburn would have arranged a meeting so WCLA

6

> could learn whether it had a lawsuit or not, unless Ausburn was attempting to misdirect WCLA's claim for a commission to the Plaintiffs, in order that Ausburn ... could avoid responsibility for paying any commission .... The meeting ... indicates that Ausburn not only limited WCLA's involvement as a broker ... but that Ausburn also encouraged or facilitated WCLA to pursue the Plaintiffs for a commission.

Reply, at 1-2. It would appear that plaintiffs wish to gather from Mr. Hendon non-privileged information he may have been privy to at the August 2003 meeting that would show that Defendant Ausburn "encouraged or facilitated WCLA to pursue the Plaintiffs for a commission." Id., at 2. Plaintiffs state that this series of events provides "circumstantial evidence supporting Plaintiffs' Second Claim for Relief." Reply, at 1.

Whether Defendant Ausburn offered encouragement to WCLA to pursue its claim for commission does not appear to be material to plaintiffs' UDTPA claim inasmuch as that particular act is not among the acts plaintiffs have alleged as "substantial aggravating circumstances." The aggravating circumstance alleged is "that the Sales Contract was signed by Ausburn on behalf of Timber Co. with knowledge of the falsity of Timber Co's representation in paragraph 18(e) that no person to whom any commission was payable had been involved in the transaction." Certainly, the affidavit that apparently finds its origin in the August 2003 meeting is material to proving the aggravating circumstance of "signing" the sales contract knowing such to be "false," whether Defendant Ausburn encouraged WCLA's suit is immaterial. Materiality has a very specific definition: "[a] material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir.1987). While after-the-fact encouragement by Defendant Ausburn may in fact be of interest to a jury and add weight to plaintiffs' contention, it is not *material* to proving the essential elements of the claim. If the facts supporting the elements of plaintiffs' claims exist, they came into existence no later than March 2003.

## 2. The Second Factor

The second factor asks whether the evidence can obtained elsewhere. If the evidence is not material, as here, there would appear to be no need continue to this second step. The undersigned will conduct review under the second step in an abundance of caution.

In this case, there appears to be another more direct source for determining whether Defendant Ausburn "encouraged or facilitated WCLA to pursue the Plaintiffs for a commission," id., at 2, which is from Defendant Ausburn himself." If Defendant Ausburn testified in a manner that would conflict with Mr. Hendon's recollections, it would be Mr. Hendon's duty to withdraw, inasmuch as the commentary to Rule 3.7 provides that "if there is likely to be substantial conflict between the testimony of the client and that of the lawyer . . . the representation is improper." Cunningham v. Sams, supra. The second factor is not satisfied.

## 3. The Third Factor

The third factor asks whether the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client. In this case, plaintiffs surmise that Mr. Hendon's testimony will show that Defendant Ausburn encouraged WCLA to file suit. Taking plaintiffs' conclusion as true, and in the context of considering the imposition of money damages for a UDTPA claim, such testimony has the potential to prejudice defendants. Thus if the first and second factors had been satisfied and if plaintiffs' characterization was something more than speculation, the third factor would have weighed in favor of disqualification. However, what plaintiffs surmise may not be correct and there is no indication to that effect.

## IV. Conclusion

The court has carefully considered the motion for disqualification, the materials submitted in support and opposition, the applicable rule, and instructive case law. In reviewing the relevant case law, it is apparent that where disqualification has occurred the attorney disqualified participated in the events that gave rise to the actual causes of action alleged. See Byrd v. Hopson, 1:02cv212 (W.D.N.C. March 7, 2003) (Thornburg, J.). Here Mr. Hendon had no independent knowledge of the facts that lead to the controversy. The real estate sale was completed in March 2003, which was months before Mr. Hendon interviewed the witness who is now his client.

As the Complaint now reads, it does not appear that what occurred at a meeting five months after the real estate closing at issue is material to the claims asserted by plaintiffs. Even if what occurred was material, it appears that plaintiffs have another effective avenue for pursuing such evidence inasmuch as Defendant Ausburn may be deposed. Indeed, that would be the best evidence. If Defendant Ausburn provides a version of events that does not coincide with Mr. Hendon's recollection, and his testimony would actually conflict, he would have a burden on a number of ethical levels to seek permission to withdraw from further representation. The undersigned has been familiar with Mr. Hendon and Mr. McGuire for many years and knows of their excellent reputations for ethical conduct, and has no doubt that Mr. Hendon would take appropriate action if necessary.

These days, attorneys simply do not have a *Paul Drake* in house to interview witnesses in anticipation of litigation: attorneys who are thorough and conscientious about their obligations under Rule 11 go out and interview the witnesses themselves prior to filing an action, just as Mr. Hendon did in the prior action. Both Mr. McGuire and Mr. Hendon are among the most respected members of the Bar of this court and, no doubt, they have been

unable to resolve this issue amicably. Nonetheless, a motion to disqualify is most unexpected at their level of practice and there exists a heavy burden in persuading the undersigned that either party should be denied their choice of attorney inasmuch as such representation would be difficult and expensive to replicate at this level of professionalism.

As a matter of law, it does not appear that Mr. Hendon should be disqualified at this point in time. Even if the law did not counsel this result, the undersigned can have no doubt but that Mr. Hendon like Mr. McGuire would raise his own hand and disqualify himself if the rules so required. In this case, it does not appear that Mr. Hendon should be disqualified and that defendants should be allowed to proceed with their attorney of choice. The undersigned will respectfully recommend that plaintiff's Motion to Disqualify Mr. Hendon be denied without prejudice.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motion to Disqualify Counsel for Defendants, Mr. George Ward Hendon, Esquire, be **DENIED** without prejudice.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

This \_\_\_6th\_\_\_ day of \_\_April\_\_, 2005.

                */s/ Dennis Howell*
                **DENNIS L. HOWELL**
                **UNITED STATES MAGISTRATE JUDGE**

United States District Court
for the
Western District of North Carolina
April 7, 2005

ejb

* * MAILING CERTIFICATE OF CLERK * *

Re: 1:04-cv-00249

True and correct copies of the attached were mailed by the clerk to the following:

Joseph P. McGuire, Esq.
McGuire, Wood & Bissette, P. A.
P. O. Box 3180
Asheville, NC 28802-3180

Woodrow Melvin Jr., Esq.
Coconut Grove Bank Bldg.
2701 S. Bayshore Dr.
Suite 302
Miami, FL 33133-5359

George Ward Hendon, Esq.
Adams, Hendon, Carson, Crow, & Saenger, PA
P.O. Box 2714
Asheville, NC 28802

cc:
Judge                       (✓)
Magistrate Judge            (✓)
U.S. Marshal                ( )
Probation                   ( )
U.S. Attorney               ( )
Atty. for Deft.             ( )
Defendant                   ( )
Warden                      ( )
Bureau of Prisons           ( )
Court Reporter              ( )
Courtroom Deputy            ( )
Orig-Security               ( )
Bankruptcy Clerk's Ofc.     ( )
Other_____         ( )

Date: 4/7/05

Frank G. Johns, Clerk
By: E. Barton
    Deputy Clerk