DEEP GAP FARM, INC., GEORGE G.   )   Civil Action No. 1: 04 CV 249
LEVIN and GAYLA SUE LEVIN,      )
                               )
            Plaintiffs,   )
                               )
v.                              )
                             )  **PLAINTIFFS' MOTION TO COMPEL**
                             )  **DISCOVERY**
CHARLES AUSBURN and DEEP GAP  )
CATTLE & TIMBER CO., L.L.C.,    )
                             )
           Defendants.  )
_____)

Pursuant to Rules 33, 34 and 37, F.R.Civ.P., Plaintiffs move the Court for an Order compelling the Defendants to complete their responses to Plaintiffs' interrogatories and production requests, primarily by:

> (i) providing the substance of conversations involving Defendant Ausburn that are referenced in Ausburn's answers to interrogatories 3, 4, 5 and 9;

> (ii) specifying which documents among the many produced by Defendants are referenced as responsive in Ausburn's answers to interrogatories 3, 4, 5, 6, 11, 12, and 13; and

> (iii) specifying which documents are referenced in Defendants' responses to production requests 1, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 18, and 19.

Plaintiffs have attached Defendants' discovery responses as **Exhibit A** (Ausburn's answers to interrogatories), **Exhibit B** (Deep Gap Cattle & Timber Co., LLC's answers to interrogatories) and **Exhibit C** (Defendants' responses to production requests).

1. Plaintiffs' interrogatories 3, 4, 5 and 9 to Ausburn request that he relate the date and substance of each of his conversations with Beecher Allison, Frances Altman, David Gillespie and Frank Preve, respectively. Allison and Altman were the brokers for Western Carolina Land Auction, with whom the Plaintiffs settled the underlying suit for a commission on the Plaintiffs' sale of Deep Gap Farm to the Defendants. Gillespie served as the Plaintiffs' manager of Deep Gap Farm. Preve served as the Plaintiffs' business manager. Each of Ausburn's answers

reference numerous conversations regarding the purchase and sale negotiations, but fail to provide the substance of those conversations by a chronological summary or otherwise. Rule 33(b) requires that each interrogatory "shall be answered separately and fully," and Rule 37(a)(3) provides that an incomplete answer is to be treated as a failure to answer. Plaintiffs maintain that Ausburn's answers are incomplete in violation of those Rules, and should be supplemented to the best of Ausburn's records and recollection.

2. Plaintiffs' interrogatories 11, 12 and 13 to Ausburn request that he identify certain transactions since January 1, 2002. In response to each of those interrogatories, Ausburn has provided a blanket reference to "documents produced pursuant to Plaintiffs' document requests." Similarly, Ausburn's answers to interrogatories 3, 4, 5 and 6 refer to unspecified documents. Rule 33(d), F.R.Civ.P., allows a party to produce business records in lieu of answering an interrogatory, but subject to the express limitation that the responding party specify the location and identity of those records. Plaintiffs maintain that Defendants' answers to interrogatories 3, 4, 5, 6, 11, 12 and 13 are incomplete in not identifying which of the many documents produced are responsive to each interrogatory.

3. Plaintiffs' production requests 1, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 18 and 19 seek various documents reflecting communications transactions relating to the Defendants' purchase of the Plaintiffs' Deep Gap Farm. In response to each of those requests, Defendants have provided a blanket reference to a stack of documents that they have produced. Plaintiffs contend that such responses by Defendants are incomplete in not identifying which documents are responsive to which production requests.

4. In addition, Plaintiffs seek to compel:

(a) Ausburn to identify the inclusive dates, duties, and reasons for termination of his places of employment—including with the corporate Defendant—since 1992 in response to interrogatory 1; and

(b) Ausburn to identify the amounts of investment or capital contribution to Deep Gap Cattle & Timber Co., LLC by each of its owners in response to interrogatory 2, as bearing upon the interest and/or bias of potential witnesses for the corporate defendant upon deposition or trial.

5. None of the Defendants' objections to the subject interrogatories and production requests have merit, since the matters inquired of are relevant and the interrogatories do not exceed those allowed by the Pretrial Order in this case.

6. Plaintiffs' counsel has conferred with Defendants' counsel and attempted in good faith to resolve the issues raised by this motion, but Defendants contend their discovery responses require no further supplementation.

WHEREFORE, Plaintiffs move the Court for an Order compelling (i) Ausburn to provide the substance of conversations responsive to Plaintiffs' interrogatories 3, 4 5 and 9; (ii) Ausburn to specify which documents produced are responsive to each of interrogatories 3, 4, 5, 6, 11, 12 and 13; (iii) Ausburn to supplement his answer to interrogory 1 by relating the dates, duties, and reasons for termination of the employment or work he has performed during and since 1992; (iv) Ausburn to supplement his answer to interrogatory 2 by identifying the investments or capital contributions made by each owner of the corporate Defendant; and (v) Defendants to specify which documents produced are responsive to each of production requests 1, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 18 and 19, within ten days of entry of the Court's Order, and for such further relief as the Court may deem just.

This the 15th day of July, 2005.

McGUIRE, WOOD & BISSETTE, P.A.

Joseph P. McGuire  (NC Bar No. 6739)
Attorneys for Plaintiffs
Post Office Box 3180
Asheville, NC 28802
Tel: (828) 254-8800

OF COUNSEL:
Woodrow Melvin, Jr.
Coconut Grove Bank Building, Suite 302
2701 South Bayshore Drive
Miami, FL 33133-5359
Tel: (305) 854-6129

## CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has this date served a copy of the foregoing **Plaintiffs' Motion to Compel Discovery** upon all parties to this action <u>via hand delivery</u> to:

> George Ward Hendon, Esq.
> Adams, Hendon, Carson, Crow & Saenger, PA
> 72 Patton Avenue
> Asheville, NC 28801
> Attorneys for the Defendants

This the 17th day of July, 2005.

_Joseph P. McGuire_

Joseph P. McGuire
Attorney for Plaintiffs



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

DEEP GAP FARM, INC., GEORGE G.
LEVIN and GAYLA SUE LEVIN,

                         Plaintiffs,

          vs.

CHARLES AUSBURN and DEEP GAP
CATTLE & TIMBER CO., LLC,

                        Defendants.

Civil Action No. 1:04 CV 249

## CHARLES AUSBURN'S ANSWERS TO INTERROGATORIES OF PLAINTIFF DEEP GAP FARM, INC.

      Defendant Charles Ausburn, responding to the Interrogatories of Plaintiff Deep Gap Farm, Inc., says as follows:

      **General Objection: In addition to the specific objections set forth below, the answering Defendant objects to these Interrogatories to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine or other applicable doctrine/privilege.**

      1. Relate chronologically and in detail the work/employment history of Charles Ausburn, including the inclusive dates, employer, or business with which he worked, his job duties, his work location(s), and reason(s) for termination of each employment or other gainful work he has performed.

      <u>ANSWER</u>: Objection. The Defendant Ausburn (sometimes referred to herein as, "Ausburn") objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the length of time covered by and the scope of information sought relating to Ausburn's employment history; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

      Former places of employment by Ausburn, with approximate dates of employment and other information requested include:
Place of Work:      Reece Auto Service, Greenville, SC
Dates:            1959-66

1

| | |
|---|---|
| Duties/Positions: | custodial care of the automotive shop; assistant auto mechanic; auto mechanic. |
| Reason for leaving: | part-time job; left for better job. |

| | |
|---|---|
| Place of Work: | Fairway Ford, Greenville, SC |
| Dates: | 1966-1970 |
| Duties/Positions: | auto mechanic; service writer; assistant body shop manager |
| Reason for leaving: | left for better job. |

| | |
|---|---|
| Place of Work: | Century Lincoln Mercury, Greenville, SC |
| Dates: | 1970-1974 |
| Duties/Positions: | assistant service manager; service manager |
| Reason for leaving: | left for better job. |

| | |
|---|---|
| Place of Work: | Young Lincoln Mercury, Shelby, NC |
| Dates: | 1974-1975 |
| Duties/Positions: | service manager |
| Reason for leaving: | left for better job. |

| | |
|---|---|
| Place of Work: | Century Lincoln Mercury, Greenville, SC |
| Dates: | 1975-1980 |
| Duties/Positions: | V.P. of fixed operations |
| Reason for leaving: | for partnership in new company with owners of Century |

| | |
|---|---|
| Place of Work: | Sandlapper Chevrolet-Oldsmobile, Newberry, SC |
| Dates: | 1980-1982 |
| Duties/Positions: | Chevrolet-Oldsmobile dealer |
| Reason for leaving: | sold out to partners in order to develop construction/real estate business |

| | |
|---|---|
| Place of Work: | Ausburn Construction, Newberry/Myrtle Beach, SC |
| Dates: | 1982-1990 |
| Duties/Positions: | owner of construction/real estate company |
| Reason for leaving: | closed business to be able to move back to Greenville to assist aging relatives |

| | |
|---|---|
| Place of Work: | Century Lincoln Mercury, Greenville, SC |
| Dates: | 1990-1992 |
| Duties/Positions: | service manager |
| Reason for leaving: | owner died; company split up and sold |

| | |
|---|---|
| Dates: | 1992 - present |
| Places of Work: | (various small companies with those that Ausburn can presently recall listed below) |
| | Ausper Construction, Inc |
| | Shammy Creek, LLC |

2

Seamount Realty
                    Wallace Creek, LLC
                    Renaissance Marketing Group, LLC
                    The Mellon-Anderson Group, LLC
                    Hird Island Investments, LLC
                    Beaufort Properties, LLC
                    Waterside Properties, LLC
                    White Rock, LLC
                    New Horizons, LLC
                    Deep Gap Cattle & Timber, Co., LLC
                    North-South Properties, LLC
                    Myrtle Grove Properties, LLC
                    Oleta Property Owners Association, LLC
                    White Rock Property Owners Association
                    Island of Beaufort POA
                    Harbor Key POA
                    Inlet at BBI POA
                    Factory Creek, LLC
                    Bermuda Bluff, LLC
Duties/Positions:   various, including construction management, consulting,
                    business management, land planning, development
                    consulting, etc.


2. For each person who is or has been a member of Deep Gap Cattle & Timber
Co., LLC, relate his or her name, address, and total amount of investment or capital
contribution he or she has made to or in Deep Gap Cattle & Timber Co., LLC, since its
formation.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that
it is overly broad in seeking information relating to the amount of investment or capital
contribution in Deep Gap Cattle & Timber Co., LLC ("Timber Co."); the interrogatory
also seeks information not reasonably calculated to lead to the discovery of admissible
evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep
Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33,
F.R.C.P., and the Pretrial Order in this action. Without waiving these objections,
Ausburn responds as follows:

Sherwood Fender, 1506 King St., Beaufort, SC, 29902; 50% interest.

Although not a person, the owner of the remaining 50% interest in Timber Co. is The
Mellon-Anderson Group, LLC, P.O. Box 650, Port Royal, SC 29935.


3. Please relate separately, chronologically, and in detail each conversation and
other communication between Charles Ausburn and Beecher Allison from 1997 to date

                                    3

regarding Deep Gap Farm and/or its prospective sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

Ausburn met Beecher Allison for the first time on the same day, in approximately early 2001, that he met David Gillespie. Over the course of the following couple of years, Ausburn spoke or otherwise communicated with Beecher Allison on approximately 10 occasions, relating to the Deep Gap sale before closing. Following the closing of Timber Co.'s purchase of the property on March 14, 2003, Ausburn spoke with Beecher Allison on 25+ occasions, some of which related to his dispute with Deep Gap Farm, Inc., and the Levins concerning his claim for a commission arising out of the sale of the Premises. See also documents produced pursuant to Plaintiffs' document requests.

4. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and Frances Wilfred Altman from 1997 to date regarding Deep Gap Farm and/or its prospective sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

Ausburn first communicated with Wilfred Altman relating to the Deep Gap property in 2001, who stated that a friend of his had listed the subject parcel of property for sale. Over the course of the following years, Ausburn spoke or otherwise communicated with Wilfred Altman on 50+ occasions, relating to the contract for Deep Gap and the closing on the property. Following the closing of Timber Co.'s purchase of the property on March 14, 2003, Ausburn spoke with Wilfred Altman on 50+ occasions, some of which related to his dispute with Deep Gap Farm, Inc., and the Levins concerning his claim for a commission. See also documents produced pursuant to Plaintiffs' document requests.

4

5. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and David Gillespie from 1997 to date regarding Deep Gap Farm and/or its prospective sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

Ausburn's first communication with David Gillespie was in early 2001, on the same date that he was introduced to Beecher Allison. Over the course of the following couple of years, Ausburn spoke or otherwise communicated with David Gillespie on approximately 100 occasions, relating to the contract on the Deep Gap property. Following the closing of Timber Co.'s purchase of the property on March 14, 2003, I spoke with David Gillespie on approximately 100 additional occasions, some of which related to the commission. David has always related to me that everyone involved knows that the Levins owed the commission, and that it was just a matter of how much was owed. See also documents produced pursuant to Plaintiffs' document requests.

6. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and George Levin from 1997 to date regarding Deep Gap Farm and/or its sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

Ausburn's first talked to George Levin in early 2002. The conversation involved the purchase of Deep Gap. He instructed Ausburn to deal with David Gillespie and Frank Preve'. At a later point, George and Sue Levin visited Ausburn in Beaufort, SC, and they had dinner together at the Beaufort Inn. The conversations during that visit were very general. He wanted to see some properties that Ausburn had worked on. He also discussed the possibility of doing a future project together. Between that visit to Beaufort and the closing of the sale and purchase of the Polk County property in March, 2003, Ausburn had only a few other communications with George Levin.

5

Most of Ausburn's communications with George Levin occurred after the March, 2003, closing and concerned the commission that George Levin was going to pay Beecher Allison's real estate company. George Levin asked Ausburn in more than one such conversation what Ausburn thought was a reasonable amount for the Levins to pay to Beecher for the commission. George Levin said he owed the commission and that he planned to pay it when he felt comfortable with the amount.

At some point after the closing, Ausburn told George Levin about possible property for purchase by the Levins in West Virginia, and the Levins went to West Virginia to see the property. In or around mid-2003, Ausburn attended a meeting with the Levins in attorney Barry Bruce's office in Lewisburg, WV, relating to the West Virginia property. After the meeting, Ausburn and George Levin and Susan Levin discussed again the commission on the Deep Gap closing. George and Susan Levin both said that they owed the commission to Beecher Allison and that they would pay him. They mentioned paying $25,000 to $50,000 to Allison and asked Ausburn what he thought. Ausburn told them that legally they might get away with paying Allison that little or nothing but that Ausburn thought that morally they owed Allison, or his company, much more. They said they planned to do the right thing and pay Allison a reasonable commission.

The last time that Ausburn spoke directly with George Levin, he asked Ausburn if he thought $450,000 was a reasonable amount for him to pay Allison. Ausburn responded that that amount was certainly more reasonable than the earlier amounts that George Levin had discussed paying. George asked Ausburn if he would speak with Allison to see if Ausburn could attempt to get Allison to settle with the Levins for an amount in that range. George Levin said that he felt the $450,000 was all that he owed Allison. Ausburn passed this along to Allison but got no commitment. Levin talked openly with Ausburn during suit against Levin by Allison. Levin never indicated anything other than he owed the commission. See also documents produced pursuant to Plaintiffs' document requests.


7. Please relate in detail the circumstances surrounding and leading to the meeting in a Hendersonville motel in August, 2003, attended by Charles Ausburn, attorney Ward Hendon, Beecher Allison, and Frances Wilfred Altman, including without limitation who initiated or arranged the meeting, the date and purpose(s) of the meeting, the name(s) of anyone else present, the length of the meeting, and agreement or outcome resulting from the meeting.

ANSWER: Ausburn objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

The meeting was initiated by either Allison or Altman. The reason for the meeting as stated by either Allison or Altman was for Ausburn to briefly relate to them

Case 1:04-cv-00249-DLH   Document 39   Filed 07/15/05   Page 10 of 34

and their attorney Ausburn's recollection of what had transpired with the Deep Gap transaction. There were no other persons present other than Ausburn, Allison, Altman and Hendon. The length of time of the meeting was less than one hour. Ausburn told the parties present the basics of the transaction as he knew, which was the same information he shared at a later date with the Levins' attorney, Woodrow Melvin, Jr., and the meeting concluded.

8. Please relate in detail the full substance of the communications during the meeting in a Hendersonville motel in August 2003 attended by Charles Ausburn, attorney Ward Hendon, Beecher Allison, and Wilfred Altman, including what was said by each person present.

ANSWER: Objection. Ausburn objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

Ausburn provided a summary of the transaction which, in substance, was as follows.

In 2000, Altman asked to show Ausburn the Deep Gap property that Allison had listed. Allison and Altman picked Ausburn and Larry Bailey up at the Holiday Inn in Hendersonville one morning to go to Deep Gap. Upon arriving at the property and before getting out of the car, Ausburn told Altman that this was a big deal and wanted to be sure they had a written listing. Altman said they did have a written listing. David Gillespie took the group on a tour of the property. Everyone thought it was a beautiful property and agreed to talk later. David Gillespie later came with Altman and Allison to visit Ausburn in Beaufort. During a progression of phone calls and onsite visits Ausburn became more interested in putting something together. Altman was calling Ausburn and Gillespie often. Altman's personality did not go well with Gillespie's. Gillespie did not want to deal with Altman at all. Later on Gillespie was also frustrated with Allison and in substance said that Ausburn should come back alone or don't come back. Ausburn informed Altman that he felt it best for Ausburn to negotiate directly with Gillespie and Frank Preve'. Altman said that was okay with him.

At a later point, Ausburn sent Preve' a fax of a proposed letter of intent that showed Altman and Allison as the sellers' agent, to be paid by seller. Preve' sent a new format of the letter of intent showing Altman and Allison as seller's agent to be paid a commission by seller. After many revisions, Preve' produced a letter of intent followed by a contract that Preve' had prepared that showed no realtors or commission to be paid. Ausburn called Preve' and said that he had made a mistake by showing no commission and no realtors. Preve' said that they wanted to pay outside closing and to call Gillespie. Gillespie said that they were going to pay Altman/Allison but they wanted to pay outside closing for certain tax purposes. Ausburn then called Altman to relay to him what had transpired. Altman said that it was OK to handle it that way and that they were protected and that they trusted Levin to pay them. After closing, Levin did not pay the

Case 1:04-cv-00249-DLH   Document 39   Filed 07/15/05   Page 11 of 34

commission. Both George and Sue Levin said they were going to pay the commission, and that it was just a matter of how much.

9. Please relate the date, circumstances, means of communications, and full substance of each of the "statements made by Plaintiffs' Business Manager, Frank Preve," as referenced in the Third Defense of Defendants' Answer filed in the matter.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in seeking the "full substance" of the referenced communications. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

See reference to communications with Preve' as referred to in response to Interrogatory #8 above.

10. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and Woodrow Melvin, Jr., from 2002 to date regarding Deep Gap Farm and/or its sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time and scope of information sought. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

Ausburn believes that his first communication with Melvin was after the Deep Gap closing in March, 2003. Melvin asked me for my recollection of what transpired with the Deep Gap transaction. Ausburn told him the same thing that he told Allison, Altman and Hendon in the meeting in Hendersonville. See response to Interrogatory #8 above.

Melvin asked Ausburn if he would sign a statement relating to their conversation and Ausburn said that he would. Melvin said he would type a statement and send it to Ausburn for his signature. Melvin later sent Ausburn a proposed statement to sign, but it was not consistent with the information that Ausburn had conveyed to Melvin. Ausburn called Melvin and told him of the inaccuracies and Melvin said that he was sorry and would correct it and send it back. There were additional communications between Ausburn and Melvin relating to the proposed statement but Ausburn never received a proposed statement that was fully accurate. Consequently, Ausburn did not sign a statement for Melvin.

8

11. If any interest, legal or equitable, in any of the real property known as Deep Gap Farm has been sold, purchased, exchanged, or optioned since January 1, 2002, identify each such event, and as to each, identify the consideration paid or received by every party.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad in the scope and time period of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Ausburn responds as follows:

See documents produced pursuant to Plaintiffs' document requests.


12. Identify each sale, exchange, option, or purchase of any other real property in which either Defendant had an interest, either by legal title or equitable interest of any kind, at any time from January 1, 2002, to date, and as to each identify the consideration paid or received by every party.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Ausburn also objects on the grounds that the interrogatory seeks confidential financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Ausburn responds as follows:

See documents produced pursuant to Plaintiffs' document requests.


13. Identify each sale, exchange, option, or purchase of any personal property in which either Defendant had an interest, either by legal title or equitable interest of any kind, at any time from January 1, 2002, to date that had a value of more than $10,000, and as to each identify the consideration paid or received by every party.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and

9

the Pretrial Order in this action. Without waiving this objection, Ausburn responds as follows:

None known other than as reflected in any documents produced pursuant to Plaintiffs' document requests.


14. Identify each business entity (whether a corporation, partnership, limited partnership, venture or other entity) in which either Defendant had any interest, legal or equitable, at any time from January 1, 2000, to date.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Ausburn also objects on the grounds that the interrogatory seeks confidential financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Ausburn responds as follows:

None.


15. Identify any files, documents, e-mail, notes, agreements, or correspondence that may pertain to the events referred to in these interrogatories or in either Defendant's answers thereto that have been destroyed, discarded or lost.

ANSWER: Objection. Ausburn objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Ausburn also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving this objection, Ausburn responds as follows:

At the request of Plaintiffs' attorneys, Ausburn sent a copy of a letter of intent to the offices of McGuire Wood & Bissette; to date, Ausburn has been unable to locate the original or a copy of this document.


16. Identify any litigation or administrative proceeding in which either Defendant has been a party or has had any interest, legal or equitable in the past five years, including the forum, style, and case number of the matter.

10

**ANSWER:** Ausburn objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving this objection, Ausburn responds as follows:

*Hugh Lightsey v. Charles Ausburn and Renaissance Marketing Group, LLC* (Hampton County, SC); *Hird Island Properties, LLC, v. Charles Ausburn, Ausper Construction, Inc., and Hird Island Investments, LLC* (Glynn County, GA)

This the 30 day of June, 2005.

ADAMS HENDON CARSON CROW & SAENGER, P.A.

By: _____

George Ward Hendon
N.C. Bar No. 2026

72 Patton Avenue
Asheville, N.C. 28801
Tel. (828) 252-7381
Fax (828) 252-5018

Attorneys for Defendants

### Certificate of Service

This is to certify that the foregoing Answers to Interrogatories of Plaintiff Deep Gap Farm, Inc., was served upon all other parties to this cause in the manner checked:

✓ by depositing a copy thereof enclosed in a post-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service to the attorneys for such parties listed below.

_____ by leaving a copy thereof at the offices of the attorneys for such parties listed below with partners or employees.

Joseph P. McGuire
McGuire, Wood & Bissette, P.A.
P.O. Box 3180
Asheville, N.C. 28802

This 30 day of June, 2005.

_____

GEORGE WARD HENDON

11

PLAINTIFF'S
EXHIBIT

_B_

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

DEEP GAP FARM, INC., GEORGE G.
LEVIN and GAYLA SUE LEVIN,

                              Plaintiffs,

         vs.                                    Civil Action No. 1:04 CV 249

CHARLES AUSBURN and DEEP GAP
CATTLE & TIMBER CO., LLC,

                              Defendants.

## DEEP GAP CATTLE & TIMBER CO., LLC'S ANSWERS TO INTERROGATORIES OF PLAINTIFF DEEP GAP FARM, INC.

Defendant Deep Gap Cattle & Timber Co., LLC , responding to the Interrogatories of Plaintiff Deep Gap Farm, Inc., says as follows:

**General Objection: In addition to the specific objections set forth below, the answering Defendant objects to these Interrogatories to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine or other applicable doctrine/privilege.**

1. Relate chronologically and in detail the work/employment history of Charles Ausburn, including the inclusive dates, employer, or business with which he worked, his job duties, his work location(s), and reason(s) for termination of each employment or other gainful work he has performed.

ANSWER: Objection. The Defendant Deep Gap Cattle & Timber Co., LLC (sometimes referred to herein as, "Timber Co.") objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the length of time covered by and the scope of information sought relating to Defendant Ausburn's ("Ausburn") employment history; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co., responds as follows:

Former places of employment by Ausburn, with approximate dates of employment and other information requested include:

1

| | |
|---|---|
| Place of Work: | Reece Auto Service, Greenville, SC |
| Dates: | 1959-66 |
| Duties/Positions: | custodial care of the automotive shop; assistant auto mechanic; auto mechanic. |
| Reason for leaving: | part-time job; left for better job. |

| | |
|---|---|
| Place of Work: | Fairway Ford, Greenville, SC |
| Dates: | 1966-1970 |
| Duties/Positions: | auto mechanic; service writer; assistant body shop manager |
| Reason for leaving: | left for better job. |

| | |
|---|---|
| Place of Work: | Century Lincoln Mercury, Greenville, SC |
| Dates: | 1970-1974 |
| Duties/Positions: | assistant service manager; service manager |
| Reason for leaving: | left for better job. |

| | |
|---|---|
| Place of Work: | Young Lincoln Mercury, Shelby, NC |
| Dates: | 1974-1975 |
| Duties/Positions: | service manager |
| Reason for leaving: | left for better job. |

| | |
|---|---|
| Place of Work: | Century Lincoln Mercury, Greenville, SC |
| Dates: | 1975-1980 |
| Duties/Positions: | V.P. of fixed operations |
| Reason for leaving: | for partnership in new company with owners of Century |

| | |
|---|---|
| Place of Work: | Sandlapper Chevrolet-Oldsmobile, Newberry, SC |
| Dates: | 1980-1982 |
| Duties/Positions: | Chevrolet-Oldsmobile dealer |
| Reason for leaving: | sold out to partners in order to develop construction/real estate business |

| | |
|---|---|
| Place of Work: | Ausburn Construction, Newberry/Myrtle Beach, SC |
| Dates: | 1982-1990 |
| Duties/Positions: | owner of construction/real estate company |
| Reason for leaving: | closed business to be able to move back to Greenville to assist aging relatives |

| | |
|---|---|
| Place of Work: | Century Lincoln Mercury, Greenville, SC |
| Dates: | 1990-1992 |
| Duties/Positions: | service manager |
| Reason for leaving: | owner died; company split up and sold |

| | |
|---|---|
| Dates: | 1992 - present |
| Places of Work: | (various small companies with those that Ausburn can presently recall listed below) |

2

Ausper Construction, Inc
                        Shammy Creek, LLC
                        Seamount Realty
                        Wallace Creek, LLC
                        Renaissance Marketing Group, LLC
                        The Mellon-Anderson Group, LLC
                        Hird Island Investments, LLC
                        Beaufort Properties, LLC
                        Waterside Properties, LLC
                        White Rock, LLC
                        New Horizons, LLC
                        Deep Gap Cattle & Timber, Co., LLC
                        North-South Properties, LLC
                        Myrtle Grove Properties, LLC
                        Oleta Property Owners Association, LLC
                        White Rock Property Owners Association
                        Island of Beaufort POA
                        Harbor Key POA
                        Inlet at BBI POA
                        Factory Creek, LLC
                        Bermuda Bluff, LLC
Duties/Positions:       various, including construction management, consulting,
                        business management, land planning, development
                        consulting, etc.


2.  For each person who is or has been a member of Deep Gap Cattle & Timber
Co., LLC, relate his or her name, address, and total amount of investment or capital
contribution he or she has made to or in Deep Gap Cattle & Timber Co., LLC, since its
formation.

ANSWER:  Objection.  Timber Co. objects to this Interrogatory on the grounds
that it is overly broad in seeking information relating to the amount of investment or
capital contribution in Deep Gap Cattle & Timber Co., LLC ("Timber Co."); the
interrogatory also seeks information not reasonably calculated to lead to the discovery of
admissible evidence.  Timber Co. also objects on the grounds that the Interrogatories of
Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by
Rule 33, F.R.C.P., and the Pretrial Order in this action.  Without waiving these
objections, Timber Co. responds as follows:

Sherwood Fender, 1506 King St., Beaufort, SC, 29902; 50% interest.

Although not a person, the owner of the remaining 50% interest in Timber Co. is The
Mellon-Anderson Group, LLC, P.O. Box 650, Port Royal, SC 29935.

3

3. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and Beecher Allison from 1997 to date regarding Deep Gap Farm and/or its prospective sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

Ausburn met Beecher Allison for the first time on the same day, in approximately early 2001, that he met David Gillespie. Over the course of the following couple of years, Ausburn spoke or otherwise communicated with Beecher Allison on approximately 10 occasions, relating to the Deep Gap sale before closing. Following the closing of Timber Co.'s purchase of the property on March 14, 2003, Ausburn spoke with Beecher Allison on 25+ occasions, some of which related to his dispute with Deep Gap Farm, Inc., and the Levins concerning his claim for a commission arising out of the sale of the Premises. See also documents produced pursuant to Plaintiffs' document requests.

4. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and Frances Wilfred Altman from 1997 to date regarding Deep Gap Farm and/or its prospective sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

Ausburn first communicated with Wilfred Altman relating to the Deep Gap property in 2001, who stated that a friend of his had listed the subject parcel of property for sale. Over the course of the following years, Ausburn spoke or otherwise communicated with Wilfred Altman on 50+ occasions, relating to the contract for Deep Gap and the closing on the property. Following the closing of Timber Co.'s purchase of the property on March 14, 2003, Ausburn spoke with Wilfred Altman on 50+ occasions, some of which related to his dispute with Deep Gap Farm, Inc., and the Levins concerning his claim for a commission. See also documents produced pursuant to Plaintiffs' document requests.

4

5. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and David Gillespie from 1997 to date regarding Deep Gap Farm and/or its prospective sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

Ausburn's first communication with David Gillespie was in early 2001, on the same date that he was introduced to Beecher Allison. Over the course of the following couple of years, Ausburn spoke or otherwise communicated with David Gillespie on approximately 100 occasions, relating to the contract on the Deep Gap property. Following the closing of Timber Co.'s purchase of the property on March 14, 2003, I spoke with David Gillespie on approximately 100 additional occasions, some of which related to the commission. David has always related to me that everyone involved knows that the Levins owed the commission, and that it was just a matter of how much was owed. See also documents produced pursuant to Plaintiffs' document requests.

6. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and George Levin from 1997 to date regarding Deep Gap Farm and/or its sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time period covered and the scope of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

Ausburn's first talked to George Levin in early 2002. The conversation involved the purchase of Deep Gap. He instructed Ausburn to deal with David Gillespie and Frank Preve'. At a later point, George and Sue Levin visited Ausburn in Beaufort, SC, and they had dinner together at the Beaufort Inn. The conversations during that visit were very general. He wanted to see some properties that Ausburn had worked on. He also discussed the possibility of doing a future project together. Between that visit to Beaufort

5

and the closing of the sale and purchase of the Polk County property in March, 2003, Ausburn had only a few other communications with George Levin.

Most of Ausburn's communications with George Levin occurred after the March, 2003, closing and concerned the commission that George Levin was going to pay Beecher Allison's real estate company. George Levin asked Ausburn in more than one such conversation what Ausburn thought was a reasonable amount for the Levins to pay to Beecher for the commission. George Levin said he owed the commission and that he planned to pay it when he felt comfortable with the amount.

At some point after the closing, Ausburn told George Levin about possible property for purchase by the Levins in West Virginia, and the Levins went to West Virginia to see the property. In or around mid-2003, Ausburn attended a meeting with the Levins in attorney Barry Bruce's office in Lewisburg, WV, relating to the West Virginia property. After the meeting, Ausburn and George Levin and Susan Levin discussed again the commission on the Deep Gap closing. George and Susan Levin both said that they owed the commission to Beecher Allison and that they would pay him. They mentioned paying $25,000 to $50,000 to Allison and asked Ausburn what he thought. Ausburn told them that legally they might get away with paying Allison that little or nothing but that Ausburn thought that morally they owed Allison, or his company, much more. They said they planned to do the right thing and pay Allison a reasonable commission.

The last time that Ausburn spoke directly with George Levin, he asked Ausburn if he thought $450,000 was a reasonable amount for him to pay Allison. Ausburn responded that that amount was certainly more reasonable than the earlier amounts that George Levin had discussed paying. George asked Ausburn if he would speak with Allison to see if Ausburn could attempt to get Allison to settle with the Levins for an amount in that range. George Levin said that he felt the $450,000 was all that he owed Allison. Ausburn passed this along to Allison but got no commitment. Levin talked openly with Ausburn during suit against Levin by Allison. Levin never indicated anything other than he owed the commission. See also documents produced pursuant to Plaintiffs' document requests.

7. Please relate in detail the circumstances surrounding and leading to the meeting in a Hendersonville motel in August, 2003, attended by Charles Ausburn, attorney Ward Hendon, Beecher Allison, and Frances Wilfred Altman, including without limitation who initiated or arranged the meeting, the date and purpose(s) of the meeting, the name(s) of anyone else present, the length of the meeting, and agreement or outcome resulting from the meeting.

ANSWER: Timber Co. objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

6

The meeting was initiated by either Allison or Altman. The reason for the meeting as stated by either Allison or Altman was for Ausburn to briefly relate to them and their attorney Ausburn's recollection of what had transpired with the Deep Gap transaction. There were no other persons present other than Ausburn, Allison, Altman and Hendon. The length of time of the meeting was less than one hour. Ausburn told the parties present the basics of the transaction as he knew, which was the same information he shared at a later date with the Levins' attorney, Woodrow Melvin, Jr., and the meeting concluded.

8. Please relate in detail the full substance of the communications during the meeting in a Hendersonville motel in August 2003 attended by Charles Ausburn, attorney Ward Hendon, Beecher Allison, and Wilfred Altman, including what was said by each person present.

ANSWER: Objection. Timber Co. objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

Ausburn provided a summary of the transaction which, in substance, was as follows.
In 2000, Altman asked to show Ausburn the Deep Gap property that Allison had listed. Allison and Altman picked Ausburn and Larry Bailey up at the Holiday Inn in Hendersonville one morning to go to Deep Gap. Upon arriving at the property and before getting out of the car, Ausburn told Altman that this was a big deal and wanted to be sure they had a written listing. Altman said they did have a written listing. David Gillespie took the group on a tour of the property. Everyone thought it was a beautiful property and agreed to talk later. David Gillespie later came with Altman and Allison to visit Ausburn in Beaufort. During a progression of phone calls and onsite visits Ausburn became more interested in putting something together. Altman was calling Ausburn and Gillespie often. Altman's personality did not go well with Gillespie's. Gillespie did not want to deal with Altman at all. Later on Gillespie was also frustrated with Allison and in substance said that Ausburn should come back alone or don't come back. Ausburn informed Altman that he felt it best for Ausburn to negotiate directly with Gillespie and Frank Preve'. Altman said that was okay with him.

At a later point, Ausburn sent Preve' a fax of a proposed letter of intent that showed Altman and Allison as the sellers' agent, to be paid by seller. Preve' sent a new format of the letter of intent showing Altman and Allison as seller's agent to be paid a commission by seller. After many revisions, Preve' produced a letter of intent followed by a contract that Preve' had prepared that showed no realtors or commission to be paid. Ausburn called Preve' and said that he had made a mistake by showing no commission and no realtors. Preve' said that they wanted to pay outside closing and to call Gillespie. Gillespie said that they were going to pay Altman/Allison but they wanted to pay outside

7

closing for certain tax purposes. Ausburn then called Altman to relay to him what had transpired. Altman said that it was OK to handle it that way and that they were protected and that they trusted Levin to pay them. After closing, Levin did not pay the commission. Both George and Sue Levin said they were going to pay the commission, and that it was just a matter of how much.

9. Please relate the date, circumstances, means of communications, and full substance of each of the "statements made by Plaintiffs' Business Manager, Frank Preve," as referenced in the Third Defense of Defendants' Answer filed in the matter.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in seeking the "full substance" of the referenced communications. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

See reference to communications with Preve' as referred to in response to Interrogatory #8 above.

10. Please relate separately, chronologically, and in detail each conversation and other communication between Charles Ausburn and Woodrow Melvin, Jr., from 2002 to date regarding Deep Gap Farm and/or its sale, including without limitation the date, the full substance, the circumstances, and any outcome of such communications.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in both the time and scope of information sought. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

Ausburn believes that his first communication with Melvin was after the Deep Gap closing in March, 2003. Melvin asked me for my recollection of what transpired with the Deep Gap transaction. Ausburn told him the same thing that he told Allison, Altman and Hendon in the meeting in Hendersonville. See response to Interrogatory #8 above.

Melvin asked Ausburn if he would sign a statement relating to their conversation and Ausburn said that he would. Melvin said he would type a statement and send it to Ausburn for his signature. Melvin later sent Ausburn a proposed statement to sign, but it was not consistent with the information that Ausburn had conveyed to Melvin. Ausburn called Melvin and told him of the inaccuracies and Melvin said that he was sorry and would correct it and send it back. There were additional communications between

8

Ausburn and Melvin relating to the proposed statement but Ausburn never received a proposed statement that was fully accurate. Consequently, Ausburn did not sign a statement for Melvin.

11. If any interest, legal or equitable, in any of the real property known as Deep Gap Farm has been sold, purchased, exchanged, or optioned since January 1, 2002, identify each such event, and as to each, identify the consideration paid or received by every party.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad in the scope and time period of information sought; the interrogatory also seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving these objections, Timber Co. responds as follows:

See documents produced pursuant to Plaintiffs' document requests.

12. Identify each sale, exchange, option, or purchase of any other real property in which either Defendant had an interest, either by legal title or equitable interest of any kind, at any time from January 1, 2002, to date, and as to each identify the consideration paid or received by every party.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Timber Co. also objects on the grounds that the interrogatory seeks confidential financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Timber Co. responds as follows:

See documents produced pursuant to Plaintiffs' document requests.

13. Identify each sale, exchange, option, or purchase of any personal property in which either Defendant had an interest, either by legal title or equitable interest of any kind, at any time from January 1, 2002, to date that had a value of more than $10,000, and as to each identify the consideration paid or received by every party.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and

9

seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving this objection, Timber Co. responds as follows:

None known other than as reflected in any documents produced pursuant to Plaintiffs' document requests.

14. Identify each business entity (whether a corporation, partnership, limited partnership, venture or other entity) in which either Defendant had any interest, legal or equitable, at any time from January 1, 2000, to date.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Timber Co. also objects on the grounds that the interrogatory seeks confidential financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Timber Co. responds as follows:

None.

15. Identify any files, documents, e-mail, notes, agreements, or correspondence that may pertain to the events referred to in these interrogatories or in either Defendant's answers thereto that have been destroyed, discarded or lost.

ANSWER: Objection. Timber Co. objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in the scope of information sought, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Timber Co. also objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving this objection, Timber Co. responds as follows:

At the request of Plaintiffs' attorneys, Ausburn sent a copy of a letter of intent to the offices of McGuire Wood & Bissette; to date, Ausburn has been unable to locate the original or a copy of this document.

10

16. Identify any litigation or administrative proceeding in which either Defendant has been a party or has had any interest, legal or equitable in the past five years, including the forum, style, and case number of the matter.

<u>ANSWER</u>: Timber Co. objects on the grounds that the Interrogatories of Plaintiff Deep Gap Farm, Inc., with discrete subparts, exceed 20 in number as allowed by Rule 33, F.R.C.P., and the Pretrial Order in this action. Without waiving this objection, Timber Co. responds as follows:

*Hugh Lightsey v. Charles Ausburn and Renaissance Marketing Group, LLC* (Hampton County, SC); *Hird Island Properties, LLC, v. Charles Ausburn, Ausper Construction, Inc., and Hird Island Investments, LLC* (Glynn County, GA)

This the **30** day of June, 2005.

ADAMS HENDON CARSON CROW & SAENGER, P.A.

By: _____

George Ward Hendon
N.C. Bar No. 2026

72 Patton Avenue
Asheville, N.C. 28801
Tel. (828) 252-7381
Fax (828) 252-5018

Attorneys for Defendants

11

## Certificate of Service

This is to certify that the foregoing Answers to Interrogatories of Plaintiff Deep Gap Farm, Inc., was served upon all other parties to this cause in the manner checked:

__✓__ by depositing a copy thereof enclosed in a post-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service to the attorneys for such parties listed below.

_____ by leaving a copy thereof at the offices of the attorneys for such parties listed below with partners or employees.

Joseph P. McGuire
McGuire, Wood & Bissette, P.A.
P.O. Box 3180
Asheville, N.C. 28802

This __30__ day of June, 2005.

GEORGE WARD HENDON

12


PLAINTIFF'S
EXHIBIT

_C_

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

DEEP GAP FARM, INC., GEORGE G.
LEVIN and GAYLA SUE LEVIN,

               Plaintiffs,

        vs.

CHARLES AUSBURN and DEEP GAP
CATTLE & TIMBER CO., LLC,

               Defendants.

Civil Action No. 1:04 CV 249

## DEFENDANTS' RESPONSES TO PRODUCTION REQUESTS BY PLAINTIFF DEEP GAP FARM, INC.

     Defendants, responding to the Production Requests by Plaintiff Deep Gap Farm, Inc., says as follows:

     **General Objection: In addition to the specific objections set forth below, Defendants object to these Production Requests to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine or other applicable doctrine/privilege.**

     1. All documents identified or referenced in Defendants' Rule 26 Disclosures, including categories B(1)(a)-(k) thereof.

     RESPONSE: Defendants will make documents responsive to this request available for inspection and copying at the offices of the Defendants' counsel at a time mutually convenient to counsel for Plaintiffs and counsel for Defendants.

     2. All documents evidencing or relating to the "expenses, costs and attorney fees" referenced in Defendants' Rule 26 Disclosures regarding computation of damages claimed by the Defendants.

     RESPONSE: The expenses, costs and attorneys fees referred to are being incurred by the Defendants in this action and any non-privileged documents that the Defendants may have responsive to this request will be gathered and provided at a later date.

3. All documents evidencing any sale, purchase, exchange or other transaction involving the subject Deep Gap Farm property since January 1, 2002.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants respond as follows:

Defendants will make documents responsive to this request available for inspection and copying at the offices of the Defendants' counsel at a time mutually convenient to counsel for Plaintiffs and counsel for Defendants.

4. All documents evidencing any sale, purchase, exchange or other transaction involving real property in which either Defendant has been a party since January 1, 2002.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object on the grounds that the request seeks confidential competitive and/or financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Defendants respond as follows:

See response to #3 above.

5. All documents evidencing any sale, purchase, exchange or other transaction involving personal property with a value in excess of $10,000 in which either Defendant has been a party since January 1, 2002.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object on the grounds that the request seeks confidential competitive and/or financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in responses to #1 and #3 above.

2

6. All notes and other documents evidencing or relating to the meeting in August, 2003, at a Hendersonville motel that was attended by Charles Defendants, Ward Hendon, Beecher Allison, F.W. Altman and possibly others.

RESPONSE: None known.


7. All notes and other documents evidencing or relating to the discussions or communications during the meeting in August, 2003, at a Hendersonville motel that was attended by Charles Ausburn, Ward Hendon, Beecher Allison, F.W. Altman and possibly others.

RESPONSE: None known.


8. All notes and other documents evidencing or reflecting any communications between Charles Ausburn and Beecher Allison since January 1, 1997.

RESPONSE: Objection. Defendants objects to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in response to #1 above.


9. All notes and other documents evidencing or reflecting any communications between Charles Ausburn and F.W. Altman since January 1, 1997.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in response to #1 above.


10. All notes and other documents evidencing or reflecting any communications between Charles Ausburn and David Gillespie since January 1, 1997.

3

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in response to #1 above.

11. All notes and other documents evidencing or reflecting any communications between Charles Ausburn and George Levin since January 1, 1997.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in response to #1 above.

12. All notes and other documents evidencing or reflecting any communications between Charles Ausburn and Ward Hendon since January 1, 2000.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to the extent this request seeks documents protected by the attorney client privilege or other applicable privilege or doctrine. Without waiving this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in response to #1 above.

13. All notes and other documents evidencing or reflecting any communications between Charles Ausburn and Woodrow Melvin, Jr., since January 1, 2000.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving

4

this objection, Defendants respond as follows:

None known other than as reflected in any documents produced in response to #1 above.

14. All documents evidencing or relating to any real estate brokerage services provided by Western Carolina Land Auction, Beecher Allison, and/or F.W. Altman regarding the sale of the subject Deep Gap Farm property.

RESPONSE: None known other than to the extent reflected in any documents produced in response to #1 above.

15. All documents evidencing or relating in any commission or other compensation claimed or negotiated regarding real estate brokerage services for the sale of the subject Deep Gap Farm property.

RESPONSE: None known other than to the extent reflected in any documents produced in response to #1 above.

16. All correspondence, e-mails, reports, or other documents evidencing or relating to any services provided by any expert retained by the Defendants relating to this lawsuit, including without limitation documents sent to the expert, authored by the expert, or received from the expert.

RESPONSE: Objection. Defendants objects to this request for production of documents to the extent it is intended to seek documents or other information broader than that required pursuant to Rule 26, F.R.C.P. Without waiving this objection, Defendants responds as follows:

None.

17. All documents evidencing or relating to any real estate transactions or negotiations in which Roy Walker was a party or had any interest.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants respond as follows:

5

None known.


18. All documents evidencing or reflecting any lease, sale, development, subdivision, or other use by either or both of the Defendants regarding the subject Deep Gap Farm property.

RESPONSE: Objection. Defendants object to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object on the grounds that the request seeks confidential competitive and/or financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Defendants respond as follows:

See response to #3 above.


19. All documents evidencing or reflecting any rent, income, sale proceeds, or other financial benefit received by either or both Defendants relating to the subject Deep Gap Farm property.

RESPONSE: Objection. Defendants objects to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object on the grounds that the request seeks confidential competitive and/or financial information and should not be subject to production in the absence of a protective order, pursuant to Rule 26(c), F.R.C.P. Without waiving this objection, Defendants respond as follows:

See response to #3 above.


20. All documents that either Defendant intends to introduce or mark for identification during any deposition or trial in this matter.

RESPONSE: Objection. Defendants objects to this request for production of documents on the grounds that it is overly broad both in the scope of documents requested and the time period covered; the request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants responds as follows:

6

Defendants have not determined which documents it intends to introduce at the trial of this action but will produce such exhibits in accordance with the Pretrial Order entered in this action.

This the _30_ day of June, 2005.

ADAMS HENDON CARSON CROW & SAENGER, P.A.

By: _____
George Ward Hendon
N.C. Bar No. 2026

72 Patton Avenue
Asheville, N.C. 28801
Tel. (828) 252-7381
Fax (828) 252-5018

Attorneys for Defendants

## Certificate of Service

This is to certify that the foregoing Defendants' Responses to Production Requests by Plaintiff Deep Gap Farm, Inc., was served upon all other parties to this cause in the manner checked:

___ by depositing a copy thereof enclosed in a post-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service to the attorneys for such parties listed below.

___ by leaving a copy thereof at the offices of the attorneys for such parties listed below with partners or employees.

Joseph P. McGuire
McGuire, Wood & Bissette, P.A.
P.O. Box 3180
Asheville, N.C. 28802

This _30_ day of June, 2005.

_____
GEORGE WARD HENDON

7